IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| BETTY DEWALT, | ) | CIVIL ACTION NO. 9:08-3936-HFF-BM |
| Plaintiff, | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) | |
| Defendant. | ) | |

The Plaintiff filed the complaint in this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner wherein she was denied disability benefits. This case was referred to the undersigned for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), (D.S.C.).

Plaintiff applied for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI)[1] alleging disability as of March 18, 2005 due to anxiety related disorders, back pain and depression. (R.pp. 32-33, 47, 67, 255-256). Plaintiff's claims were denied initially and upon reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge (ALJ), which

---

[1] Although the definition of disability is the same under both DIB and SSI; Emberlin v. Astrue, No. 06-4136, 2008 WL 565185, at * 1 n. 3 (D.S.D. Feb. 29, 2008); "[a]n applicant who cannot establish that she was disabled during the insured period for DIB may still receive SSI benefits if she can establish that she is disabled and has limited means." Sienkiewicz v. Barnhart, No. 04-1542, 2005 WL 83841, ** 3 (7th Cir. Jan. 6, 2005). See also Splude v. Apfel, 165 F.3d 85, 87 (1st Cir. 1999)[Discussing the difference between DIB and SSI benefits]. Under SSI, the claimant's entitlement to benefits (assuming they establish disability) begins the month following the date of filing the application forward. Pariseau v. Astrue, No. 07-268, 2008 WL 2414851, * 13 (D.R.I. June 13, 2008).



was held on October 3, 2007. (R.pp. 274-300). The ALJ thereafter denied Plaintiff's claims in a decision issued February 25, 2008. (R.pp. 12-21). The Appeals Council denied Plaintiff's request for a review of the ALJ's decision, thereby making the determination of the ALJ the final decision of the Commissioner. (R.pp. 3-6).

Plaintiff then filed this action in United States District Court. Plaintiff asserts that there is not substantial evidence to support the ALJ's decision, and that the decision should be reversed and remanded for an award of benefits. The Commissioner contends that the decision to deny benefits is supported by substantial evidence, and that Plaintiff was properly found not to be disabled.

## Scope of review

Under 42 U.S.C. § 405(g), the Court's scope of review is limited to (1) whether the Commissioner's decision is supported by substantial evidence, and (2) whether the ultimate conclusions reached by the Commissioner are legally correct under controlling law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Richardson v. Califano, 574 F.2d 802, 803 (4th Cir. 1978); Myers v. Califano, 611 F.2d 980, 982-983 (4th Cir. 1980). If the record contains substantial evidence to support the Commissioner's decision, it is the court's duty to affirm the decision. Substantial evidence has been defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. **If there is evidence to justify refusal to direct a verdict were the case before a jury, then there is "substantial evidence."** [emphasis added].

Hays, 907 F.2d at 1456 (citing Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966)).

The Court lacks the authority to substitute its own judgment for that of the

2



Commissioner. Laws, 368 F.2d at 642. "[T]he language of [405(g)] precludes a de novo judicial proceeding and requires that the court uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by substantial evidence." Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

## **Discussion**

A review of the record shows that Plaintiff, who was thirty two (32) years old when she alleges she became disabled, has an eleventh grade education with past relevant work experience as a shirt presser, custodian, and production inspector. (R.pp. 47, 279, 296). In order to be considered "disabled" within the meaning of the Social Security Act, Plaintiff must show that she has an impairment or combination of impairments which prevent her from engaging in all substantial gainful activity for which she is qualified by her age, education, experience and functional capacity, and which has lasted or could reasonably be expected to last for at least twelve (12) consecutive months.

After a review of the evidence and testimony in the case, the ALJ determined that, although Plaintiff does suffer from the severe impairments[2] of asthma, vertigo, and depression, which render her unable to perform any of her past relevant work, she nevertheless retained the residual functional capacity (RFC) to perform a full range of work at all exertional levels with certain specified non-exertional limitations, and is therefore not disabled. (R.pp. 14-15, 20-21). Plaintiff asserts that in reaching this decision, the ALJ erred by improperly rejecting the limitations found by consultative psychologist Dr. Robert Phillips, and by generally reaching an unsupported conclusion

---

[2]An impairment is "severe" if it significantly limits a claimant's physical or mental ability to do basic work activities. See 20 C.F.R. § 404.1521(a); Bowen v. Yuckert, 482 U.S. 137, 140-142 (1987).



with respect to Plaintiff's mental RFC assessment. However, after careful review and consideration of the evidence and arguments presented, the undersigned finds that there is substantial evidence in the record to support the conclusion of the ALJ that Plaintiff was not disabled as that term is defined in the Social Security Act during the relevant time period, and that the decision should therefore be affirmed.

The record reflects that Plaintiff was seen at the Columbia Heart Clinic on January 21, 2004 complaining of syncope[3] and chest pain. Test results were essentially normal. (R.pp. 217-218). Plaintiff continued thereafter to have periodic complaints of dizziness and headaches and occasional back pain, for which she apparently went to emergency rooms for treatment. These hospital records reflect that Plaintiff was generally found to be well developed, alert, and in no acute stress on these visits. (R.pp 209-216). In addition to these complaints, in January 2005 Plaintiff also complained about her "nerves" and anxiety, for which she was prescribed medication. (R.p. 205). Plaintiff then continued to be seen monthly (apparently at the hospital emergency room) thereafter, where she was again generally found on examination to be well developed, well nourished, alert, and in no acute distress. Plaintiff complained of having trouble with her son and that she was going through a divorce, and these records indicate that she was continued on her anti-anxiety medications. (R.pp. 198-204).

On May 4, 2005 (two months after Plaintiff's alleged disability onset), a clinical assessment form was completed by (apparently) a nurse at the Berkeley County Mental Health

---

[3]Partial or complete loss of consciousness with interruption of awareness of oneself and ones surroundings. When the loss of consciousness is temporary and there is spontaneous recovery, it is referred to as syncope or, in non-medical quarters, fainting. http://www.medterms.com/script/main/art.asp?articlekey=5612

4



System. Plaintiff complained of auditory hallucinations and lack of sleep. Her intelligence and vocabulary were found to be adequate, and she had a generally unremarkable mental status exam. (R.p. 194). Plaintiff was assessed with depression, asthma, vertigo, and low blood pressure. (R.p. 196).

On May 11, 2005, Plaintiff was seen by Dr. Alfred Ebert, who noted that Plaintiff had "good attention and concentration in spite of the fact she has two young children with her and they are very active. She . . . handle(s) in a loving and caring manner." On examination Plaintiff's memory was intact, her speech was normal in volume and tone, she was easily understood, and she was never loud or irritated. Plaintiff advised Dr. Ebert that, although she had received medications from family doctors, she had never seen a psychiatrist and had no psychiatric hospitalizations. Plaintiff also denied any current auditory or visual hallucinations, but did talk about having heard voices previously and having had flashbacks about being raped. Plaintiff was assessed with depressive disorder, asthma, vertigo, and low blood pressure, and was continued on Paxil and Effexor for depression and anxiety, and was also prescribed Abilify for auditory hallucinations and paranoia, even though she had specifically denied paranoia. (R.pp. 185-187). On a return visit to Dr. Ebert on June 1, 2005, Plaintiff reported that she was feeling better, was less anxious, and had no side effects from her medications. Plaintiff reported sleeping better and exhibited no symptoms of psychosis, she was dressed appropriately, was cooperative and friendly, her affect was appropriate, and her mood was improved. (R.p. 184).

Plaintiff returned to see Dr. Ebert again on July 6, 2005 and reported that she was "doing better and feeling better". She reported that she continued to be a good mother, and had gone to a July 4th celebration with family members. Dr. Ebert reported that Plaintiff's flashbacks were



5

decreasing, although she continued to have depressive symptoms. Nevertheless, she was again found to be cooperative with good attention and concentration, and exhibited an appropriate affect, an euthymic mood,[4] with no hallucinations or paranoia. (R.pp. 182-183). Craig v. Chater, 76 F.3d 585, 589-590 (4th Cir. 1996) [noting importance to be accorded treating physician's opinion].

A separate physical examination of the Plaintiff was conducted on June 30, 2005, by Dr. Angie Mills, to whom Plaintiff relayed complaints of frequent headaches and dizziness with fainting spells, problems with her asthma, and various aches and pains. Plaintiff had an essentially normal physical examination, with 5/5 strength in both her upper and lower extremities, no clubbing, cyanosis or edema, and a normal gait. Plaintiff was also found not to have low blood pressure. Dr. Mills opined that Plaintiff's vertigo may be made worse by her social situation, counseling was recommended for her depression, and she was advised to "optimize" her asthma medications in order to control this condition. (R.pp. 188-190). Richardson v. Perales, 402 U.S. 389, 408 (1971) [assessment of examining, non-treating physicians may constitute substantial evidence in support of a finding of non-disability].

On August 3, 2005, Plaintiff presented to psychologist Dr. Robert Phillips for a consultative examination. Plaintiff was clean and appropriately dressed, was pleasant and cooperative with clear speech and good eye contact, and was consistent in her manner and mood with no sign of thought disturbance. Plaintiff reported that she spent most of the day doing small things around the house, including helping with chores and meals, and watching television. On

---

[4]Euthymia or euthymic mood indicates a normal non-depressed, reasonably positive mood. It is distinguished from euphoria, which refers to an extreme of happiness, and dysthymia, which refers to a depressed mood. **http://psychology.wikia.com/wiki/Euthymia_(medicine)**



examination, her short term memory was fair and she had some difficulty in holding focus, but not enough to be disruptive. She described her usual feeling as "good", and her thinking was free of distortion, tangential thinking or paranoid ideation, and she was able to follow simple directions. Plaintiff reported that she tended to stay slightly anxious, but not necessarily upset, most of the day. Dr. Phillips administered a WRAT-3 organizational test, which indicated that Plaintiff was functioning at the fourth and fifth grade levels in reading, spelling and arithmetic. Additional tests revealed no suggestion of organic brain dysfunction. Dr. Phillips opined that Plaintiff was limited in her ability to cope with stress, described as "only fair", and her insight was found to be lacking. Dr. Phillips believed Plaintiff would have a "very inconsistent" performance in working with peers and supervisors and could only work at a "very reduced level", although he believed she would be a reliable worker "when not tuned out or worrying about the events in her life." Dr. Phillips also opined that Plaintiff would have problems following complicated directions, that she had a "consistent reduction" in her social skills, and was "moderately limited" in her ability to understand instructions and to carry out instructions. However, Dr. Phillips did believe that Plaintiff could work in a more isolated environment where she would feel less distracted. Dr. Phillips assigned Plaintiff a current GAF of 35.[5]  (R.pp. 178-181).

On August 24, 2005, state agency psychologist Dr. Lisa Varner reviewed Plaintiff's medical records and completed a psychiatric review technique form in which she found that Plaintiff

---

[5]"Clinicians use a GAF [Global Assessment of Functioning] to rate the psychological, social, and occupational functioning of a patient." Morgan v. Commissioner of Soc. Sec. Admin., 169 F.3d 595, 597 n.1 (9th Cir. 1999). "A GAF score of 31-40 indicates 'some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment in several areas such as work or school, family relations, judgment, thinking, or mood.'" Kirves v. Callahan, No. 96-5179, 1997 WL 210813 at **2 (6th Cir. Apr. 25, 1997).



had mild restrictions in her activities of daily living, moderate limitations in her social functioning and in maintaining concentration, persistence, or pace, with no episodes of decompensation. Dr. Varner opined that, while Plaintiff's symptoms and impairments were severe, they would not preclude the performance of simple, repetitive work tasks in a setting that does not require ongoing interaction with the public. (R.pp. 164-176). On October 26, 2005, a second state psychologist, Dr. Debra Price, reviewed Plaintiff's medical records and came to the same conclusions as had Dr. Varner with respect to Plaintiff's functional limitations. (R.p. 146). Dr. Price opined that Plaintiff was able to carry out simple tasks for two hours at a time without special supervision, would not have an unacceptable number of work absences due to psychiatric symptoms, that she was able to relate appropriately to coworkers and supervisors but would be best suited for a work setting without the added demands of public contact work, that there was no evidence of any significant impairment in Plaintiff's ability to adapt to work place changes, and that while her symptoms were severe, they would not preclude her from carrying out basic work functions. (R.p. 152). Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986)[opinion of a non-examining physician can constitute substantial evidence to support the decision of the Commissioner].

      Also in October 2005, state agency physician Dr. George Chandler reviewed Plaintiff's medical records and completed a physical residual functional capacity assessment in which he found that Plaintiff had no exertional, postural, manipulative, visual, or communicative limitations. With respected to environmental limitations, because of Plaintiff's asthma and vertigo, Dr. Chandler opined that Plaintiff would need to avoid concentrated exposure to fumes and other aspects of poor ventilation, and hazards such as machinery and heights. (R.pp. 156-163). See also (R.pp. 124-128 (reflecting generally normal physical examinations)); Smith, 795 F.2d at 345.



In a discharge summary dated May 11, 2006 from the Berkeley County Mental Health System, it was noted that Plaintiff had last been seen on February 21, 2006, at which time her condition was stable with a GAF score of 60[6], and that no further care was being provided by that agency because the Plaintiff had "dropped out or rejected services". (R.p. 94).

In a visit to the Newberry Family Health Clinic on October 10, 2007, Plaintiff was found on examination to have a normal gait; grossly normal tone and muscle strength; full, painless range of motion of all major muscle groups and joints; and no crepitus or tenderness in her major joints. (R.p. 100). In a subsequent visit to the Newberry Family Health Center on September 14, 2007, Plaintiff was found to have some medial and lateral edema in her right knee. (R.p. 103).

The ALJ reviewed Plaintiff's medical history as well as her subjective testimony from the hearing and concluded that she retained the RFC to perform a full range of work at all exertional levels with certain specified non-exertional limitations. (R.p. 15). In making this determination, the ALJ found that Plaintiff had only mild restrictions in her activities of daily living, and moderate difficulties in her social functioning and with regard to concentration, persistence or pace, with no episodes of decompensation. (R.p. 15). To accommodate these findings, the ALJ restricted Plaintiff to unskilled work with a SVP of 1 or 2, in a low stress environment, and with no public contact. (R.p. 18). Cf. Wood v. Barnhart, No. 05-432, 2006 WL 2583097 at * 11 (D.Del. Sept. 7, 2006) [By restricting plaintiff to jobs with simple instructions, the ALJ adequately accounted for plaintiff's moderate limitation in maintaining concentration, persistence or pace]; Smith-Felder v.

---

[6]A GAF of 51 to 60 indicates that only moderate symptoms are present. Perry v. Apfel, No. 99-4091, 2000 WL 1475852 at *4 (D.Kan. July 18, 2000); Matchie v. Apfel, 92 F.Supp.2d 1208, 1211 (D.Kan. 2000). As noted hereinabove, Plaintiff was found to be at the very top of this range in February 2006.

9



Commissioner, 103 F.Supp.2d 1011, 1014 (E.D.Mich. June 26, 2000) [hypothetical question including work involving only a mild amount of stress and only "simple one, two, or three step operations" properly comports with findings of ALJ as to plaintiff's moderate limitations in concentration, social functioning, and tolerance of stress]; Kusilek v. Barnhart, 175 Fed. Appx. 68, 71 (7th Cir. 2006) [string cites]. The ALJ further accommodated Plaintiff's problems with vertigo and asthma by restricting her to jobs with no exposure to excessive dust, fumes, gases, odors, and extremes of temperature and humidity, as well as to jobs with no exposure to heights or hazardous machinery, no operation of automotive equipment, and no climbing or balancing. (R.p. 17). In rejecting Plaintiff's subjective testimony as to the extent of her pain and limitations, the ALJ noted her daily activities, lack of hospitalizations, and relatively conservative treatment for her condition. (R.pp. 16-17). Anderson v. Barnhart, 344 F.3d 809, 815 (8th Cir. 2003)[Evidence that a claimant is exaggerating symptoms can be considered as part of the evaluation of Plaintiff's subjective complaints]; Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990)[False or exaggerated responses are entitled to weight in determining whether an impairment exists]; Robinson v. Sullivan, 956 F.2d 836, 840 (8th Cir. 1992) [conservative treatment not consistent with allegations of disability]; see also Mickles v. Shalala, 29 F.3d 918, 925-926 (4th Cir. 1994) [In assessing the credibility of the severity of reported subjective complaints, consideration must be given to the entire record, including the objective and subjective evidence].

      The undersigned can find no reversible error in the ALJ's review and evaluation of the medical records and subjective testimony presented in this case. The records and opinions of the treating and consultative examining physicians and other medical records provide substantial evidence to support the residual functional capacity found by the ALJ; Craig, 76 F.3d at 585, 589-

10



590 [noting importance to be accorded treating physician's opinion]; Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1993) [ALJ may properly give significant weight to an assessment of an examining physician]; Richardson, 402 U.S. at 408 [assessment of examining, non-treating physicians may constitute substantial evidence in support of a finding of non-disability]; as do the opinions of the state agency physicians. Smith, 795 F.2d at 345 [opinion of a non-examining physician can constitute substantial evidence to support the decision of the Commissioner]; Johnson v. Barnhart, 434 F.3d 650, 657 (4th Cir. 2005)[ALJ can give great weight to opinion of medical expert who has thoroughly reviewed the record]; see SSR 96-6p.[7]

      Plaintiff's major complaint is that the ALJ rejected the limitations opined to by Dr. Phillips following his consultative examination. However, the ALJ was not required to accept this opinion. The ALJ specifically referenced Dr. Phillips and his findings in his decision, but chose to give more weight to the evidence from the mental health center and Plaintiff's family practitioners, which he found provided a more comprehensive evaluation over a longer period of time and showed a significantly higher level of functioning than what Dr. Phillips had indicated. (R.pp. 19-20). Again, the undersigned can find no reversible error in this decision. Hays, 907 F.2d at 1456 [It is the responsibility of the ALJ to weigh the evidence and resolve conflicts in that evidence]; Clarke v. Bowen, 843 F.2d 271, 272-273 (8th Cir. 1988)["The substantial evidence standard presupposes . . . a zone of choice within which the decision makers can go either way without interference by the Courts"]; see also Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964)[court scrutinizes the

---

[7]While the ALJ's decision does not specifically reference the state agency physician opinions, they are included in the medical record to which the ALJ repeatedly refers. In any event, there is substantial evidence in the record to support the decision even absent the state agency physician reports.

11



record as a whole to determine whether the conclusions reached are rational]; cf. Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) ["[A] psychological disorder is not necessarily disabling. There must be a showing of related functional loss."]; Foster v. Bowen, 853 F.2d 483, 489 (6th Cir. 1988) [A mental impairment diagnosis is insufficient, standing alone, to establish entitlement to benefits.]; Shively v. Heckler, 739 F.2d 987, 990 (4th Cir. 1984)[Commissioner is charged with resolving conflicts in the evidence, and a court may not reverse a decision merely because the evidence would permit a different conclusion]; Ross v. Shalala, No. 94-2935, 1995 WL 76861, at * 2 (Feb. 24, 1995)[ALJ's decision upheld where the ALJ appeared to split the difference between physician's opinions]; Laws, 368 F.2d 640 [Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion"].

Plaintiff argues as a ground for reversible error the fact that the ALJ in his decision incorrectly identified the meaning of the GAF rating assigned by Dr. Phillips in his opinion (35). The ALJ stated in his decision that a GAF score of 35 "would indicate that the claimant's behavior is considerably influenced by delusions or hallucinations, or that she had a serious impairment in communication or judgment (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation), or that she had an inability to function in almost all areas (e.g., stays in bed all day; no job, home or friends). (R.p.19). The ALJ then stated that such a GAF rating was not consistent with Dr. Phillips' statements in his report, or with the treatment notes from the mental health center or from Plaintiff's family practitioners. Id. Plaintiff correctly notes in his brief, however, that the description given by the ALJ in his decision was for a GAF score of between 21 and 30, not a GAF score of 35, and that a GAF score of 35 actually indicates "the presence of a major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood." Plaintiff Brief,



12

pp. 13-14. See, n. 5, supra.

The ALJ's error in describing the meaning of a GAF score of 35 does not, however, require a reversal of the decision, for the simple fact that Dr. Phillips' GAF score was not a factor in the decision. The ALJ found that the records from Plaintiff's treatment at the local mental health center as well as those from her family practitioners provided a more comprehensive evaluation over a longer period of time with respect to the Plaintiff's mental disorders and impairments, and were more persuasive than were the limitations cited by Dr. Phillips, which he rejected. (R.pp. 20, 180-181). These records included generally unremarkable mental status exams, a treating physician finding that Plaintiff exhibited an euthymic mood (a normal non-depressed, reasonably positive mood), and mental health clinic records showing Plaintiff with a GAF of 60 (indicating only moderate symptoms). (R.pp. 94, 182-183, 194). There is substantial evidence in the record to support the ALJ's conclusion, and therefore no reversible error has been shown. Benskin v. Bowen, 830 F.2d 878, 883 (8th Cir. 1987)[Error that had no practical effect on the outcome of the case is not cause for reversing the Commissioner's decision]; Casterlow v. Commissioner of Social Security, No. 06-2575, 2008 WL 2704370 at * 10 (W.D.Tenn. July 8, 2008)[ALJ error does not justify overturning a decision that is otherwise supported by substantial evidenced].

Plaintiff's argument that the decision should be reversed because the ALJ found Plaintiff's educational level to be "limited" when he should have found it to be "marginal", and because the jobs identified by the vocational expert as being jobs Plaintiff could perform exceed the basic requirements of unskilled work, are similarly without merit. As correctly noted by the Defendant, Plaintiff herself testified that she had an eleventh grade education, which is considered to be "limited" for regulatory purposes. See 20 C.F.R. § 404.1564. Further, even had the ALJ



13

assigned Plaintiff a "marginal" educational level based on Dr. Phillips' findings, individuals with a marginal educational level are considered capable of performing simple, unskilled work. Id. All of the jobs identified by the vocational expert are classified as unskilled jobs. (R.pp. 297-298).

Additionally, even if the Court were to accept for purposes of argument that the jobs of plumber assembler, wafer breaker, and mail clerk exceed the basis requirements of simple, unskilled work, it is undisputed that the job of garment sorter (also identified by the VE) clearly falls into this category. The vocational expert testified that there are 3,076 garment sorter positions in South Carolina, and 211,602 in the national economy. (R.p. 298). These are more than sufficient positions to satisfy the requirement of there being a significant number of positions available for Plaintiff to work. Hick v. Califano, 600 F.2d 1048, 1051 n. 2 (4th Cir. 1979)[noting as few as 110 jobs constitute a significant number]; Belanger v. Barnhardt, No. 03-31, 2003 WL 22960388 at *2 (D.Me. Jan. 30, 2003) ["Significant number" of jobs requirement met where the elimination of one job, which VE incorrectly testified that Plaintiff could perform under SSR 00-4P, left five other jobs that Plaintiff could perform]; Welch v. Barnhardt, No. 02-247, 2003 WL 22466165 at *4 (D.Me. Oct. 31, 2003) [Plaintiff is not entitled to relief where ALJ eliminated job from consideration that was inconsistent with the hypothetical question posed to the VE under SSR 00-4p even though ALJ offered no explanation for the inconsistency], adopted by, 2003 WL 22834930 (D.Me. Nov. 24, 2003); Benskin, 830 F.2d at 883 [Error that had no practical effect on the outcome of the case is not cause for reversing the Commissioner's decision]. Therefore, Plaintiff's arguments are without merit.

## **Conclusion**

Substantial evidence is defined as " ... evidence which a reasoning mind would accept as sufficient to support a particular conclusion." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir.



1984). As previously noted, if the record contains substantial evidence to support the decision (i.e., if there is sufficient evidence to justify a refusal to direct a verdict were the case before a jury), this Court is required to uphold the decision, even should the Court disagree with the decision. Blalock, 483 F.2d at 775.

Under this standard, the record contains substantial evidence to support the conclusion of the Commissioner that the Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time period. Therefore, it is recommended that the decision of the Commissioner be **affirmed**.

_____
Bristow Marchant
United States Magistrate Judge

December 1, 2009

Charleston, South Carolina

